UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KITARU INNOVATIONS INC.,

                Plaintiff,

- against -

ASHOK CHANDARIA and SACHEN CHANDARIA,

                Defendants.

ECF CASE

09 Civ. 3602 (PGG)

**MEMORANDUM OPINION AND ORDER**

PAUL G. GARDEPHE, U.S.D.J.:

        Plaintiff Kitaru Innovations Inc. ("Kitaru") brings this action against Ashok and Sachen Chandaria for claims arising out of a dispute over ownership rights to United States Patent No. 6,874,554. Plaintiff seeks a declaratory judgment that it has not infringed on the patent in question, a judgment setting aside what it claims was a fraudulent transfer of rights under the patent from Ashok to Sachen Chandaria, money damages for tortious interference, and a permanent injunction preventing Defendants from contacting any of Kitaru's customers or licensees with respect to claims of patent infringement.

        Defendants have moved to dismiss or, in the alternative, to stay this action pending the outcome of a related action in Canada. For the reasons stated below, the motion to dismiss will be GRANTED on grounds of forum non conveniens.

**BACKGROUND**

        Kitaru is a Barbados corporation with its principal place of business in Saint James, Barbados. (Cmplt. ¶ 1) Ashok and Sachen Chandaria are citizens of the United Kingdom who reside in Kenya. (Cmplt. ¶¶ 2-3)

The Complaint alleges that on February 28, 2006, Ashok Chandaria assigned all of his rights and interest in United States Patent No. 6,874,554 (the "'554 Patent") to Kitaru. (Cmplt. ¶ 7)  The assigning document was recorded with the United States Patent Office on May 16, 2006.  (Id.)  The Complaint further alleges, however, that Ashok Chandaria executed a second assignment of the '554 Patent on January 15, 2008, purporting to transfer all of his rights and interest in this same patent to Sachen Chandaria, his son.  (Cmplt. ¶¶ 7, 8)  This document was recorded by the United States Patent Office on February 6, 2008.  (Cmplt. ¶ 7)

Kitaru alleges that in late 2008, LePage's 2000, Inc., one of Kitaru's principal customers and patent licensees, and LePage's principal shareholder, the Conros Corporation, received several letters from a Toronto law firm on behalf of Ashok Chandaria and his family. (Cmplt. ¶ 8)  The letters claimed that LePage's was unlawfully using patents owned by Ashok Chandaria and his family.  (Id.)  The law firm refused, however, to identify the patents in question.  (Id.)  Kitaru alleges that an investigation into the letters' allegations revealed the January 2008 assignment of the '554 Patent to Sachen Chandaria.  (Id.)

Kitaru then filed this suit seeking (1) a declaratory judgment that it has not infringed on Ashok Chandaria's rights to the '554 Patent (Cmplt. ¶¶ 10-13); a declaratory judgment setting aside the allegedly fraudulent transfer of rights to the '554 Patent to Sachen Chandaria (Cmplt. ¶¶ 14-16); and (3) an injunction barring the Defendants from contacting any of Kitaru's customers or licensees with respect to any claim of patent infringement (Cmplt. ¶¶ 25-27).  Kitaru also seeks damages for alleged tortious interference.  (Cmplt. ¶¶ 17-22)

## DISCUSSION

Defendants argue that this action should be dismissed or stayed in light of a closely related action filed by Ashok Chandaria in the Superior Court of Justice for Ontario, Canada (the "Canadian Action"). Defendants contend that a dismissal or stay is appropriate under the abstention doctrine and on grounds of forum non conveniens.

The Canadian Action was filed on March 4, 2009. (Sobel Decl., Ex. 1 at 2) On July 24, 2009, Ashok Chandaria filed an Amended Statement of Claim, adding claims related to the '554 Patent.[1] (Sobel Decl., Ex. 1 at ¶¶ 36-42)

The Amended Statement of Claim in the Canadian Action names forty parties as defendants and outlines a complex family dispute in which the claims set forth in the instant action are merely one part. According to the Amended Statement of Claim, all of the companies involved in the action at bar – Kitaru, LePage's and the Conros Corporation – are owned by the Chandaria family and are controlled by, among others, Kapoor and Navin Chandaria, Ashok Chandaria's brothers. (Sobel Decl., Ex. 1 at ¶¶ 4, 8) Kitaru,[2] LePage's, a number of Conros entities, and Kapoor and Navin Chandaria are all named as defendants in the Canadian Action. (Sobel Decl., Ex. 1 at 1)

---

[1] On September 30, 2009, Kitaru submitted a letter to this Court concerning the status of the Canadian Action. Kitaru reported that on September 21, 2009, the Ontario Superior Court of Justice struck the amended pleading and awarded costs to the movant. (Pltf. Ltr. 1) Kitaru suggested that because no "fresh pleading" had been filed, dismissal of the instant case in favor of the Canadian Action would be "unwarranted." (Id.) Kitaru's letter, however, misrepresents the Canadian court's September 21 order. In that order, the Court struck the amended statement of claim "as against the Conros Defendants" only (Def. Oct. 2 Ltr. Ex. B at 2), a development that has no effect on the claims against Kitaru.

[2] Plaintiff claims that Kitaru's corporate name is Kitaru Innovations Inc. rather than Kitaru Innovations Limited, as referenced in the Amended Statement of Claim. (Murphy Decl., ¶ 3) The Amended Statement of Claim, however, asserts that Kitaru has been known under both names. (Sobel Decl., Ex. 1 at ¶ 8)

3

The Amended Statement of Claim alleges that in early 2007 the Chandaria brothers agreed that Ashok Chandaria's proportionate share of the family's North American businesses would be paid out to him. (Id. at ¶ 25) As part of this agreement, Ashok Chandaria agreed to transfer ownership of several patents, including the '554 Patent, to Kitaru in exchange for receiving his share of the family business and financial holdings. (Id. at ¶¶ 36-37, Schedule A at 1) Ashok Chandaria alleges, however, that he was never paid his share. (Id. at ¶ 38) As a result, Ashok Chandaria seeks to void the assignment of the patents, including the '554 Patent, for failure of consideration and fraudulent misrepresentation. (Id. at ¶¶ 40-42)

In considering Defendants' motion to dismiss on abstention or forum non conveniens grounds, this Court may consider affidavits, affirmations and exhibits submitted in connection with the motion. See Goldberg v. UBS AG, 660 F. Supp. 2d 410, 419 (S.D.N.Y. 2009) (citing cases stating that courts may consider complaint, affirmations, affidavits, and exhibits in deciding a motion to dismiss on forum non conveniens grounds); Kingsway Fin. Servs. v. Pricewaterhouse-Coopers, LLP, 420 F. Supp. 2d 228, 233 (S.D.N.Y. 2005) (citing cases stating that courts may consider affidavits and other evidence in considering a motion to dismiss on abstention grounds).

## I.     ABSTENTION IS NOT APPROPRIATE

Federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them," Colo. River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976), and the existence of a parallel foreign proceeding does not negate that obligation. Royal & Sun Alliance Ins. Co. of Can. v. Century Int'l Arms, Inc., 466 F.3d 88, 92 (2d Cir. 2006). The Second Circuit has stated that "[g]enerally, concurrent jurisdiction in United States courts and the courts of a foreign sovereign does not result in conflict. Rather, '[p]arallel

4

proceedings in the same in personam claim should ordinarily be allowed to proceed simultaneously, at least until a judgment is reached in one which can be pled as res judicata in the other.'" Id. (quoting China Trade & Dev. Corp. v. M.V. Choong Yong, 837 F.2d 33, 36 (2d Cir. 1987)).

Accordingly, "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule." Colorado River, 424 U.S. at 813.  In determining whether to abstain in favor of a foreign proceeding, a district court

> is not to articulate a justification for the exercise of jurisdiction, but rather to determine whether exceptional circumstances exist that justify the surrender of that jurisdiction.  The exceptional circumstances that would support such a surrender must, of course, raise considerations which are not generally present as a result of parallel litigation, otherwise the routine would be considered exceptional, and a district court's unflagging obligation to exercise its jurisdiction would become merely a polite request.

Royal & Sun Alliance Ins. Co. of Can., 466 F.3d at 93 (emphasis in the original). The abstention decision rests "'on a careful balancing of the important factors . . . as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction.'" Id. at 94 (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 16 (1983)).

"In the context of parallel proceedings in a foreign court, a district court should be guided by principles upon which international comity is based:  the proper respect for litigation in and the courts of a sovereign nation, fairness to litigants, and judicial efficiency." Royal & Sun Alliance Ins. Co. of Can., 466 F.3d at 94.  In weighing whether abstention is appropriate, courts should consider:  "the similarity of the parties, the similarity of the issues, the order in which the actions were filed, the adequacy of the alternate forum, the potential prejudice to either party, the convenience of the parties, the connection between the litigation and the United States

and the connection between the litigation and the foreign jurisdiction." Id.  A district court must "examine the 'totality of the circumstances' to determine whether the specific facts before it are sufficiently exceptional to justify abstention." Id. (quoting Finova Capital Corp. v. Ryan Helicopters U.S.A., Inc., 180 F.3d 896, 900 (7th Cir. 1999)).

The Canadian Action is a parallel proceeding to the instant action, and presents substantially the same parties litigating, inter alia, substantially similar issues.  See Royal & Sun Alliance Ins. Co. of Can., 466 F.3d at 94 ("For two actions to be considered parallel, the parties in the actions need not be the same, but they must be substantially the same, litigating substantially the same issues in both actions.").  Although Sachen Chandaria is not named in the Canadian Action, Ashok Chandaria and Kitaru are parties to both actions.  See Sobel Decl., Ex. 1 at 1.  Moreover, the Canadian Action involves claims concerning the '554 Patent at issue in this litigation as well as claims concerning other patents.  Accordingly, the issues raised in the Canadian Action subsume those presented here.  See Sobel Decl., Ex. 1 at ¶¶ 36-37, 40-42, Schedule A at 1.

In arguing that this court should abstain from exercising jurisdiction, Defendants note that the Canadian Action was filed on March 4, 2009, approximately one month before the case at bar.[3]  See Sobel Decl., Ex. 1 at 2.  The first-filed factor, however, "does not turn exclusively on the sequence in which the cases were filed, 'but rather [involves a comparison] of

---

[3] Plaintiffs point out that the Canadian Action initially did not involve a claim concerning the '554 Patent.  This claim was added when the Statement of Claim was amended on July 24, 2009, more than three months after the instant action was filed.  See Sobel Decl., Ex. 1.  In general, "[t]his circuit applies the first-filed rule in favor of a plaintiff who amends his complaint to include issues that his adversary has raised in a second-filed suit in another district." GMT Corp. v. Quiksilver, No. 02 Civ. 2229 (GBD), 2002 WL 1788016, at *2 (S.D.N.Y. July 31, 2002) (citing GT Plus, Ltd. v. Ja-Ru, Inc., 41 F. Supp. 983 (E.D.N.Y.1991); Mattel, Inc. v. Louis Marx & Co., 353 F.2d 421, 424 (2d Cir.1965)).  This issue need not be resolved, however, because the "first-filed" factor is neutral here.

6

how much progress has been made in the two actions.'"  Dunkin' Donuts Franchised Rest. LLC v. Rijay, Inc., No. 06 Civ. 8237 (WCC), 2007 WL 1459289, at *19 (S.D.N.Y. May 17, 2007) (quoting Vill. of Westfield v. Welch's, 170 F.3d 116, 122 (2d Cir. 1999)).  Here, there is no evidence that the Canadian Action had progressed significantly during the thirty days that preceded the filing here, or that it has progressed significantly since that filing.  See Sobel Decl., Ex. 1; Def. Oct. 2, 2009 Ltr., Ex. B.  Accordingly, this factor is neutral.  See Palm Bay Int'l, Inc. v. Marchesi Di Barolo S.P.A., 659 F. Supp. 2d 407, 414 (E.D.N.Y. 2009) (first-filed factor given "only minimal weight" where the federal action was filed only eight days after the foreign proceeding); Dunkin' Donuts Franchised Rest. LLC, 2007 WL 1459289, at *19-20 (finding that the first-filed factor was neutral where a state court action had progressed no further than the federal action at issue).

Defendants also contend that they will be prejudiced by having to litigate in two forums simultaneously, and that the locus of operative facts is in Canada.  (Def. Br. 6, 14-15)  Even accepting Defendants' arguments on these points, however, they do not justify abstention.

As Royal & Sun Alliance Ins. Co. of Can. makes clear, absent "exceptional circumstances," "'[p]arallel proceedings . . . should ordinarily be allowed to proceed simultaneously.'"  Royal & Sun Alliance Ins. Co. of Can., 466 F.3d at 92 (quoting China Trade & Dev. Corp., 837 F.2d at 36).  No exceptional circumstances exist here.  Indeed, the circumstances Defendants cite – for example, the similarity of the parties and issues presented and the burden of litigating in two forums simultaneously – are commonly present when a parallel foreign proceeding is ongoing.  See Klonis v. Nat'l Bank of Greece, S.A., 487 F. Supp. 2d 351, 356 (S.D.N.Y. 2006) (rejecting abstention argument where "[m]ost of the arguments advanced by defendant relate to facts which will generally exist in parallel litigations, including

7

the identity of the parties and issues" and "inconvenience"). Circumstances such as these, which "routinely exist in connection with parallel litigation[,] cannot reasonably be considered exceptional circumstances. . . ."[4]  Royal & Sun Alliance Ins. Co. of Can., 466 F.3d at 95.

As an alternative to a dismissal on abstention grounds, Defendants propose that this Court stay the instant action.  "'[A] stay is as much a refusal to exercise federal jurisdiction as a dismissal[, however].'"  Id. at 96 (quoting Moses H. Cone Mem'l Hosp., 460 U.S. at 28). While the Second Circuit has endorsed the use of a "measured temporary stay" that "might permit the district court a window to determine whether the foreign action will in fact offer an efficient vehicle for fairly resolving all the rights of the parties," Royal & Sun Alliance Ins. Co. of Can., 466 F.3d at 96, Defendants have offered no justification for a stay here.  See Def Br. 12-15; Def. Reply Br. 6 n. 4.  To impose a stay would needlessly defer a decision on the abstention issue, under circumstances where it is plain that abstention is inappropriate.

---

[4]  None of the cases cited by Defendants suggest that abstention would be appropriate here. While the courts in Dragon Capital Partners L.P. v. Merrill Lynch Capital Serv., 949 F. Supp. 1123 (S.D.N.Y. 1997) and Caspian Inv., Ltd. v. Vicom Holdings, Ltd., 770 F. Supp. 880 (S.D.N.Y. 1991) accepted abstention arguments, these cases were decided before the Second Circuit's decision in Royal & Sun Alliance Ins. Co. of Can.  Accordingly, those courts did not apply the "exceptional circumstances" test required under Royal & Sun Alliance.

Even if the Dragon Capital and Caspian Investments courts had applied the proper test, those cases would be distinguishable.  In Caspian Investments, the Court deferred to an Irish court, noting that the foreign proceeding had been filed eight months before the domestic proceeding and had progressed through discovery to the point where "a trial is imminent."  770 F. Supp. at 885.  That court also emphasized the fact that the plaintiff in the domestic action had also commenced the Irish suit.  Id.  In Dragon Capital, the Court deferred to a proceeding in Hong Kong, where that suit had been filed a full year and a half before the U.S. action, had progressed beyond its initial stages, and had been filed by the Plaintiff.  949 F. Supp. at 1128.  Here, the Canadian Action was filed by Defendant Ashok Chandaria only one month before the instant action and does not appear to have progressed any further than the case at bar.  See Sobel Decl. Ex. 1 at 2; Def. Oct. 2, 2009 Ltr. Ex. B.  Accordingly, even if Caspian Investments and Dragon Capital had been decided under the "exceptional circumstances" standard, they would be distinguishable.

8

For the reasons stated, this Court will not dismiss or stay this action on grounds of abstention.

## II.     DISMISSAL IS APPROPRIATE UNDER THE FORUM NON CONVENIENS DOCTRINE

Defendants also move to dismiss on grounds of forum non conveniens. "The principle of forum non conveniens is simply that a court may resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute." Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 507 (1947). The Supreme Court has "characterized forum non conveniens as, essentially, 'a supervening venue provision, permitting displacement of the ordinary rules of venue when, in light of certain conditions, the trial court thinks that jurisdiction ought to be declined.'" Sinochem Int'l Co. v. Malay. Int'l Shipping Corp., 549 U.S. 422, 429-30 (2007) (quoting American Dredging Co. v. Miller, 510 U.S. 443, 453 (1994)).

"The decision to dismiss a case on forum non conveniens grounds 'lies wholly within the broad discretion of the district court. . . .'" Iragorri v. United Techs. Corp., 274 F.3d 65, 72 (2d Cir. 2001) (quoting Scottish Air Int'l, Inc. v. British Caledonian Group, PLC, 81 F.3d 1224, 1232 (2d Cir. 1996)), and is subject to a three-step analysis. First, the court must "determine[] the degree of deference properly accorded the plaintiff's choice of forum." Norex Petroleum, Ltd. v. Access Indus., 416 F.3d 146, 153 (2d Cir. 2005). Second, the court must consider "whether the alternative forum proposed by the defendants is adequate to adjudicate the parties' dispute." Id. Finally, the court "balances the private and public interests implicated in the choice of forum." Id.

### A.    Plaintiff's Choice of Forum

"Any review of a forum non conveniens motion starts with 'a strong presumption in favor of the plaintiff's choice of forum.'" Id. at 154 (quoting Piper Aircraft Co. v. Reyno, 454

9

U.S. 235, 255 (1981)).  "[L]ess deference" is afforded to a foreign plaintiff's choice of a U.S. forum, however,[5] Norex Petroleum, Ltd., 416 F.3d at 154, and the degree of deference owed to a foreign plaintiff's choice of forum is subject to a sliding scale:

> "The more it appears that a domestic or foreign plaintiff's choice of forum has been dictated by reasons that the law recognizes as valid, the greater the deference that will be given to the plaintiff's forum choice.  Stated differently, the greater the plaintiff's or the lawsuit's bona fide connection to the United States and to the forum of choice and the more it appears that considerations of convenience favor the conduct of the lawsuit in the United States, the more difficult it will be for the defendant to gain dismissal for forum non conveniens. . . . On the other hand, the more it appears that the plaintiff's choice of a U.S. forum was motivated by forum-shopping reasons . . . the less deference the plaintiff's choice commands and, consequently, the easier it becomes for the defendant to succeed on a forum non conveniens motion by showing that convenience would be better served by litigating in another country's courts."

Id. (quoting Iragorri v. United Techs. Corp., 274 F.3d at 71-72).

Here, Kitaru is incorporated and has its principal place of business in Barbados. (Cmplt. ¶ 1)  Neither the Complaint nor the Plaintiff's opposition brief set forth any connection between Kitaru and this forum.  Furthermore, this "lawsuit's bona fide connection to the United States" and in particular to the Southern District of New York is tenuous at best.  See Norex Petroleum, Ltd., 416 F.3d at 154.  While the Complaint asserts that "a substantial part of the events giving rise to the claims alleged herein occurred in this District" (Cmplt. ¶ 5), the Complaint's only reference to New York is an allegation that an Ossining, New York law firm

---

[5] Kitaru cites Wiwa v. Royal Dutch Petroleum Co., 226 F.3d 88 (2d Cir. 2000), and Sinochem Int'l Co., Ltd. v. Malaysia Int'l Shipping Corp., 549 U.S. 422 (2007), for the proposition that Defendants bear a heavy burden in seeking to disturb Kitaru's choice of forum. (Pltf. Br. 7) Those cases acknowledge, however, that "[w]hen the plaintiff's choice is not its home forum, [] the presumption in the plaintiff's favor 'applies with less force,' for the assumption that the chosen forum is appropriate is in such cases 'less reasonable.'"  Sinochem Int'l Co., 549 U.S. at 430 (quoting Piper Aircraft Co., 454 U.S. at 255-256); see also Wiwa, 226 F.3d at 101-02.

drafted and filed the assignment of rights to the '554 Patent executed by Ashok Chandaria in favor of his son Sachen.  (Cmplt. ¶ 7)  The law firm's location is mere happenstance, however, and none of the parties or their licensees appear to have any connection to New York.

Kitaru argues, without citing any supporting case law, that this action should be adjudicated here instead of a Canadian court because it involves U.S. patents and assignments recorded with the U.S. Patent Office.  (Pltf. Br. 7)  "It is well settled[, however,] that if the patentee pleads a cause of action based on rights created by a contract, or on the common law of torts, the case is not one 'arising under' the patent laws."  Jim Arnold Corp. v. Hydrotech Sys., 109 F.3d 1567, 1572 (Fed. Cir. 1997).  Here, Kitaru pleads causes of action based on rights it alleges were created by the assignment Ashok Chandaria executed in its favor.  (Cmplt. ¶ 7)  Accordingly, Kitaru's claims do not "arise under the patent laws."  See id.

"[T]he question of who owns patent rights, and on what terms, typically is a question exclusively for state courts and not one arising under United States patent laws."  Int'l Nutrition Co. v. Horphag Research Ltd., 257 F.3d 1324, 1329 (Fed. Cir. 2001); see also Akazawa v. Link New Tech. Int'l, Inc., 520 F.3d 1354, 1357 (Fed. Cir. 2008) ("Our case law is clear that state law, not federal law, typically governs patent ownership.").  In International Nutrition, the Federal Circuit, applying Second Circuit law, held that the ownership of the patent at issue was properly the subject of foreign law, in light of the terms of the contract between the parties.  Id. at 1329-31.

In this case, neither side has taken a position on what law applies to the assignment agreement entered into by Kitaru and Ashok Chandaria.  It is entirely unclear whether the assignment agreement is governed by U.K. law, Kenyan law, Canadian law, the law of Barbados, or the law of some other jurisdiction.  There is no suggestion in the assignment –

11

which was executed in Nairobi, Kenya – that New York law applies.  See Sobel Decl., Ex. 1, Schedule C.  Whatever law applies, the notion that a federal court must adjudicate this claim because it involves a U.S. patent, or that "Canadian courts do not possess the authority to make determinations on U.S. patents," is untenable in light of Jim Arnold Corporation and International Nutrition.  The mere fact that this action involves a U.S. patent is insufficient to provide a "bona fide connection" between the instant action and this forum.

In light of Kitaru's foreign citizenship and the lack of bona fide connections between this lawsuit and this district, Kitaru's choice of forum is entitled to only minimal weight.  See Norex Petroleum, Ltd., 416 F.3d at 154; see also Wilson v. Imagesat Int'l N.V., No. 07 Civ. 6176, 2008 WL 2851511, at *4-5 (S.D.N.Y. July 30, 2008) (plaintiffs' choice of forum entitled to only "minimal" or "limited" deference where "[r]oughly half of the plaintiffs are American or connected to United States citizens and entities" and "many reasons of fairness and convenience" indicate "that this lawsuit belongs in Israel"); Turedi v. Coca Cola Co., 460 F. Supp. 2d 507, 522-23 (S.D.N.Y. 2006) (plaintiffs' choice of forum entitled to no deference where plaintiffs were all Turkish citizens and their claims were made under international law).

### B.     Availability of an Adequate Alternative Forum

"To secure dismissal of an action on grounds of forum non conveniens, a movant must demonstrate the availability of an adequate alternative forum."  Norex Petroleum, Ltd., 416 F.3d at 157.  "'An alternative forum is adequate if the defendants are amenable to service of process there, and if it permits litigation of the subject matter of the dispute.'"  Id. (quoting Pollux Holding Ltd. v. Chase Manhattan Bank, 329 F.3d 64, 75 (2d Cir. 2003)).  However, "'the availability of an adequate alternative forum does not depend on the existence of the identical cause of action in the other forum,' nor on identical remedies."  Norex Petroleum, Ltd., 416 F.3d

at 158 (quoting PT United Can Co. v. Crown Cork & Seal Co., 138 F.3d 65, 74 (2d Cir. 1998)). Here, the Canadian court in which the Canadian Action is pending provides an adequate alternative forum.

There is no question that Defendants are amenable to service in Canada. Ashok Chandaria brought the Canadian Action (Sobel Decl. Ex. 1 at 1), and both Ashok and Sachen Chandaria concede that they are amenable to jurisdiction in Canada. (Def. Br. 17) This representation is sufficient to demonstrate that Canada is an adequate alternative forum with regard to service of process. See Norex Petroleum, Ltd., 416 F.3d at 157; see also Wilson, 2008 WL 2851511, at *6.

The progress of the Canadian Action also plainly indicates that Canadian courts "permit[] litigation of the subject matter of the dispute." See Norex Petroleum, Ltd., 416 F.3d at 157. The Amended Statement of Claim in the Canadian Action seeks a determination as to the ownership of the '554 Patent, among many others. (Id. at ¶¶ 40-42) Kitaru baldly asserts that "it is difficult to imagine how a Canadian court or any Court other than a U.S. District Court would have the jurisdiction to issue the relief sought in Count II of the Complaint – 'to set aside the second assignment as null and void and invalid for fraud' – given that the fraudulent second assignment has been recorded in the PTO." (Pltf. Br. 6) Kitaru cites no case law for this proposition, however, and there is no reason to believe that the Canadian court could not provide this relief. See Jim Arnold Corp., 109 F.3d at 1572; Int'l Nutrition Co., 257 F.3d at 1329. The mere fact that the assignment between Ashok and Sachen Chandaria was recorded at the U.S. Patent Office does not change that fact.

### C. Balancing Private and Public Interest Factors

The final step in a forum non conveniens analysis is the balancing of private and public interest factors.

The private interest factors include: "(1) ease of access to evidence; (2) the availability of compulsory process for the attendance of unwilling witnesses; (3) the cost of willing witnesses' attendance; (4) if relevant, the possibility of a view of premises; and (5) all other factors that might make the trial quicker or less expensive." DiRienzo v. Philip Servs. Corp., 294 F.3d 21, 29-30 (2d Cir. 2002) (citing Gilbert, 330 U.S. at 508); see also Iragorri, 274 F.3d at 73-74. In considering the private interest factors, "'the court should focus on the precise issues that are likely to be actually tried, taking into consideration the convenience of the parties and the availability of witnesses and the evidence needed for the trial of these issues.'" Monegasque De Reassurances S.A.M. v. Nak Naftogaz of Ukraine, 311 F.3d 488, 500 (2d Cir. 2002) (quoting Iragorri, 274 F.3d at 74).

The public interest factors include: "(1) administrative difficulties associated with court congestion; (2) the unfairness of imposing jury duty on a community with no relation to the litigation; (3) the 'local interest in having localized controversies decided at home;' and (4) avoiding difficult problems in conflict of laws and the application of foreign law." DiRienzo, 294 F.3d at 31 (quoting Gilbert, 330 U.S. at 508-09); see also Iragorri, 274 F.3d at 74.

Application of the private interest factors here indicates that ownership of the '554 Patent should be litigated as part of the larger Canadian Action. Defendants assert that "none of the evidence or witnesses with knowledge of the facts relevant to this action are located in New York. Most are located in Toronto, Canada where Navin and Kapoor [Chandaria] reside and also where they maintain offices for Plaintiff [Kitaru] and its 'licensee' LePage's." (Def. Br.

18)  While Kitaru denies certain of these facts (Murphy Decl. ¶ 3), it does not dispute that Navin and Kapoor Chandaria reside in Canada, that they control Kitaru, that LePage's and Conros have offices in Canada, and that most of the witnesses reside in Canada.  Kitaru likewise does not contest Defendants' claim that relevant witnesses and evidence are not located in New York, with the exception of the law firm that prepared the second assignment.  "While parties are not required to submit detailed affidavits identifying witnesses they would call, they must provide enough information to enable the District Court to balance the parties' interests."  Palm Bay Int'l, Inc., 659 F. Supp. 2d at 411 (citations omitted).  Given that it is undisputed that the individuals who control Kitaru reside in Canada, that the principal licensee of the patent at issue has offices in Canada, that most of the witnesses reside in Canada, and that no critical witness and no critical evidence is located in New York, application of the private convenience factors favors the Canadian Action.  Cf. Palm Bay Int'l, Inc., 659 F. Supp. 2d at 411 (determining that the "location of witnesses" factor "weighs against dismissal" where the defendant "provided the Court with very limited information" as to potential witnesses).

This Court is also required to consider the convenience of the parties in assessing the private interest factors.  See Monegasque De Reassurances, 311 F.3d at 500.  Defendants allege that they will be unfairly inconvenienced if forced to litigate ownership of the '554 Patent here while litigating the same issue, among many others, in Canada.  (Def. Br. 18)  They further note that they reside in Kenya, that they have fewer financial resources than Kitaru because they are currently without the funds at issue in the Canadian Action, and that Ashok Chandaria is in failing health.  Id.; see also Cmplt. ¶¶ 2-3; Sobel Decl. Ex. 1 at ¶¶ 22, 38.  Kitaru does not address these points, nor does it suggest that it would be inconvenienced or unable to bear the

15

cost of litigating its claims in Canada.[6]  See Pltf. Br. 6-8.  Accordingly, the convenience of the parties also favors resolution of this dispute as part of the Canadian Action.  See Wilson, 2008 WL 2851511, at *7 (finding that the private interest factors "strongly favor" the foreign forum where, among other issues, plaintiffs failed to show that they would be unable to afford the cost of pursuing their claims in the foreign court).

The public interest factors – which Kitaru does not address (Pltf. Br. 6-8) – are either neutral or favor the Canadian Action.

The first factor – the "administrative difficulties associated with court congestion" – is neutral, given that there is no indication that the Canadian courts "are any more congested than the busy courts in this District."  See Turedi, 460 F. Supp. 2d at 527.

The second and third public interest factors – "the unfairness of imposing jury duty on a community with no relation to the litigation" and the "local interest in having localized controversies decided at home" – implicate the connection or lack of connection between the litigation and the forum.  DiRienzo, 294 F.3d at 31.  These factors weigh in favor of dismissal.  This jurisdiction has no connection to this litigation.  None of the parties are New York residents or even U.S. citizens.  The fact that a New York law firm was tangentially involved in the events at issue, and that the case involves a U.S. patent, are insufficient to create a local interest in the outcome of this litigation.  Utilizing scarce local judicial resources to resolve claims in which there is no local interest or connection – while a Canadian court is engaged in resolving precisely the same claims – makes no sense.

---

[6]  Kitaru argues that "the issue that defendants purport to want to litigate in Canada – the setting aside of the first, valid assignment of the '554 Patent to Kitaru on the ground of lack of consideration – is frivolous."  (Pltf. Br. 7-8)  This issue will be litigated wherever this action proceeds, however, and the relative merits of the parties' claims and defenses are not among the factors to be considered on a motion to dismiss on grounds of forum non conveniens.

16

The dispute concerning ownership of the '554 Patent is part of a much larger dispute involving rights to Canadian, Australian, Chinese, European, Japanese and U.S. patents. (Sobel Decl., Ex. 1 at ¶ 36)  Because many of the parties involved in the larger Chandaria family dispute are located in Canada (Sobel Decl., Ex. 1 at 1-5), there is a local interest in and connection to the Canadian Action that is not present here.

The final public interest factor is the need to avoid "difficult problems in conflict of laws and the application of foreign law." DiRienzo, 294 F.3d at 31.  Because it is entirely unclear what law will govern this dispute, this factor is difficult to address.  Nonetheless, it is apparent that consideration of the assignment agreement entered into by Kitaru and Ashok Chandaria will likely involve choice of law, which could well be decided differently by a Canadian court than by this Court.  Accordingly, simultaneous litigation of the two actions could lead to conflicting decisions concerning ownership of the '554 Patent.

Having considered all of the public and private interest factors, it is apparent that they favor the Canadian Action.

## **CONCLUSION**

Because (1) Plaintiff's choice of forum is – under the circumstances discussed above – entitled to little weight; (2) the Canadian court provides an adequate alternative forum; and (3) analysis of the relevant public and private interest factors demonstrates that deference to the Canadian Action is appropriate, Defendants' motion to dismiss on grounds of forum non conveniens is GRANTED. The Clerk of the Court is directed to terminate the motion (Docket No. 9) and to close this case.

Dated: New York, New York
       March 23, 2010

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge